**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**FRED E. FRAZIER**                                                                                  **PLAINTIFF**

**V.**                                                               **NO. 2:07CV47-EMB**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                                        **DEFENDANT**

## MEMORANDUM OPINION

Plaintiff, Fred E. Frazier, seeks judicial review pursuant to 42 U.S.C. § 405(g) of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding his application for a period of disability and disability insurance benefits. The Court, having duly considered the briefs of the parties, the administrative record and the applicable law, finds as follows.

## Administrative Proceedings

Plaintiff filed his application for a period of disability and disability insurance benefits (DIB) on March 11, 2004 (Tr. 59-61), alleging a disability onset date of August 21, 2003 (Tr. 59). This application was denied both initially and upon reconsideration. (Tr. 32, 34-36, 33, 38-41). In a partially favorable hearing decision dated October 11, 2006, the ALJ found that Plaintiff was disabled from August 21, 2003, through May 6, 2005, and not disabled due to medical improvement beginning May 7, 2005, and continuing through the date of the decision. (Tr. 16-25). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 23, 2007. (Tr. 6-9). The ALJ's final decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Facts**

The Court has thoroughly reviewed the medical evidence in this case and with the exception of pertinent medical information discussed below, will not recite the medical evidence.

*Hearing Testimony*

Plaintiff appeared and testified at the administrative hearing conducted on June 15, 2006, in Greenwood, Mississippi. (Tr. 367-82). Plaintiff testified that he took pain medication for the pain in his left ankle, right knee, and lower back. (Tr. 370). However, other than taking painkillers and muscle relaxers, Plaintiff hadn't received any other treatment for his back. (Tr. 373). He said he also used ice and elevation of his leg to reduce his pain. (Tr. 374, 377, 381). Plaintiff testified that he didn't do any housework but could take care of all his personal needs. (Tr. 375). He testified that he could walk without his cane and used it when he had to go long distances or travel in a vehicle for an extended period of time. He said the cane served as "just more support." He said he could stand about ten to fifteen minutes at one time. (Tr. 376). He could walk about the same amount of time before needing to sit down. He testified that when he used his cane, he used it in his left hand. (Tr. 380). He further stated he could carry a little less than 10 pounds in his right hand, with his cane at his side for support.

Plaintiff also testified concerning his typical daily activities. (Tr. 374-76, 382). He had to go down a flight of steps to take his small dog out. (Tr. 374). He sat in a recliner with his feet elevated each day. (Tr. 374-75, 381). He took a sit-down shower in the bathtub. (Tr. 374). He drove to the hearing, a trip of about one hour, and stopped once along the way. (Tr. 375).

The vocational expert summarized Plaintiff's past relevant work as follows: welder, skilled, medium level of exertion; industrial mechanic, skilled, heavy; and firefighter, skilled, very heavy. (Tr. 383-84). The ALJ asked the vocational expert to consider whether a

hypothetical individual of the same age, education, work background, and RFC as Plaintiff could perform Plaintiff's past work. (Tr. 384-85). The vocational expert testified that the individual could not perform Plaintiff's past relevant work. (Tr. 385). However, the vocational expert said that there were other jobs that the individual could perform, including gate guard, parking lot cashier, and ticket seller. (Tr. 385).

*ALJ's Findings*

Plaintiff was born in 1963. (Tr. 59). He graduated from high school. (Tr. 92, 367). Plaintiff had worked as a welder, industrial mechanic, and firefighter. (Tr. 24, 383-84). Plaintiff alleged that he could not work due to status post surgical repair of fractured left ankle times two, status post right knee surgery and bulging disk in the lower back. (Tr. 73, 86). After a careful review and evaluation of the medical evidence of record, the subjective testimony at the hearing (Tr. 367-82), and the testimony of a vocational expert (Tr. 383-86), the ALJ found Plaintiff was disabled during the period beginning August 21, 2003, and continuing through May 6, 2005 (Tr. 22, 25). However, the ALJ found that medical improvement occurred and that Plaintiff was no longer disabled beginning May 7, 2005, and continuing through the date of the decision. (Tr. 23, 25). Contrary to Plaintiff's allegation of disability, the ALJ found that beginning May 7, 2005, Plaintiff had the residual functional capacity ("RFC") to perform unskilled work at the light level of exertion, compromised by certain limitations. (Tr. 23). Plaintiff was restricted to jobs that did not involve more than a total of four hours of standing and/or walking in a day, only occasional stooping, crouching, crawling, and kneeling, and no balancing, climbing, or pushing/pulling with the lower extremities.

## **Analysis**

Plaintiff asserts these three arguments in his Brief:

1. The Commissioner erred in failing to explain his basis for rejecting the opinions of

3

Dr. Parker and Dr. Lochemes that Plaintiff could not perform any stooping after the date his condition supposedly "improved," that he was limited to walking/standing only 15 minutes in a one hour period and that he was using a cane to ambulate.

2. The Commissioner failed to include Plaintiff's need for a cane in his RFC assessment, even though the need for an assistive device to ambulate would impact the ability to carry twenty pounds.

3. The Commissioner failed to explain why he was not adopting Dr. Sandifer's opinion that Mr. Frazier was precluded from doing any work requiring movement with agility and/or speed.

*Issue 1*

Plaintiff contends the Commissioner failed to give reasons for rejecting the opinions of Dr. Lochemes and Dr. Parker that he could not perform any stooping, that he was limited to standing only fifteen minutes in a one hour period and that he needed a cane to ambulate. Plaintiff suggests the ALJ was required to give a detailed explanation for rejecting the opinions of these doctors because they were treating specialists. Plaintiff relies on *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), for this position.

In *Newton* the Fifth Circuit concluded that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[1]  In this

---

[1] Under § 404.1527(d)(2), if the treating source's opinion is not given controlling weight, the ALJ must consider the following factors in determining how much weight to give that opinion:

1. Length of treatment relationship and frequency of examination;
2. Nature and extent of the treatment relationship;
3. Supportability of the medical opinion;
4. Consistency of the opinion with the record as a whole;
5. Specialization of the medical source; and
6. Other factors.

case, the medical opinion of an examining source, Dr. Fred M. Sandifer, III, conflicted with Dr. Lochemes' "permanent" restrictions.[2]

On September 9, 2004, Dr. John J. Lochemes opined that Plaintiff was reaching maximum medical improvement and that he would not be able to go back to "long-term standing" and limited Plaintiff's standing to fifteen minutes in a one hour period. (Tr. 337). He also restricted Plaintiff from "significant" bending, stooping and squatting. Under the heading "Current Work Status," Dr. Lochemes noted that Plaintiff's permanent restrictions included ten pounds of continuous lifting, 25 pounds intermittent lifting and no climbing, kneeling, stooping, twisting and pushing/pulling. Plaintiff was further restricted to fifteen minutes per hour of standing and walking. Notwithstanding these restrictions, however, Plaintiff was released to return to work.

Later, on January 13, 2005, Dr. Lochemes decided to remove the screws from Plaintiff's ankle in an effort to resolve his complaints of continued pain. (Tr. 330). However, on January 27, 2005, Dr. Lochemes determined that removal of the screws had not changed Plaintiff's condition in any way. (Tr. 329). He recommended a block intervention and pain control to achieve functional results and improvement to finally get Plaintiff back into the workplace. Later, on February 10, 2005, Dr. Lochemes noted that Plaintiff had an appointment to go to a pain clinic and indicated that he was nearing maximum medical improvement. (Tr. 328). Then,

---

[2]Plaintiff suggests that both Dr. Lochemes and Dr. Parker imposed the subject restrictions. However, the Court has thoroughly reviewed the medical records of both doctors and finds that specific weight and standing restrictions were imposed by Dr. Lochemes only. Plaintiff began treating with Dr. Parker (and saw her over a period of only nine months) in order to obtain a second opinion regarding ankle surgery. (Tr. 314-23). Though Dr. Parker performed an independent evaluation of Plaintiff (Tr. 322-23), her medical notes indicate that she merely noted or simply deferred to the restrictions imposed by Dr. Lochemes as her medical notes contain very few independent medical signs or laboratory findings beyond Plaintiff's subjective complaints of pain.

5

on July 28, 2005, Dr. Lochemes noted that Plaintiff still complained of pain laterally though clinically the ankle and subtalar alignment were "perfect" and X-rays showed good fusion with removal of the hardware. (Tr. 327). Finally, on January 3, 2006, Dr. Lochemes noted that Plaintiff's symptoms were relatively stable and that he had no further recommendations for Plaintiff. (Tr. 325).

On January 18, 2005, Plaintiff presented to Autry J. Parker, M.D., on referral from Dr. Lochemes for a second opinion regarding left ankle surgery. (Tr. 322-23, 329). On April 5, 2005, Dr. Parker noted that Plaintiff had "moderate" pain improvement with low-dose MS Contin, so she increased his dosage. (Tr. 320). Ultimately, she noted that Plaintiff was reaching maximum medical improvement and opined that with lifting and prolonged standing restrictions, Plaintiff could return to full-time work. Later, on May 6, 2005, Dr. Parker noted that an increased dosage of MS Contin had improved Plaintiff's symptoms. (Tr. 319). She further noted that though Plaintiff was using a cane, he was fully weight bearing. Dr. Parker opined that Plaintiff could return to work with a modified duty assignment.

On May 10, 2005, Dr. Parker listed the restrictions imposed by Dr. Lochemes. (Tr. 318). She further noted that Plaintiff had enjoyed about a fifty percent improvement of his pain symptoms on his current regimen of MS Contin and that she expected him to reach maximum medical improvement with ongoing maintenance upon his next visit. However, on June 3, 2005, Plaintiff complained that MS Contin twice a day was not helping a full twelve hours. (Tr. 317). So, Dr. Parker adjusted Plaintiff's dose of MS Contin and scheduled him to return in two months. Later, on August 3, 2005, Dr. Parker noted that Plaintiff was doing relatively well from a pain standpoint but that he needed amitriptyline for sleep. (Tr. 316). Then, on October 25, 2005, Dr. Parker noted that Plaintiff had done relatively well on his current regimen and that a pain clinic would assume care of his ongoing maintenance. (Tr. 314).

6

On July 18, 2006, after an examination and review of X-rays of Plaintiff's right knee and left ankle, Dr. Sandifer gave a diagnosis of degenerative arthritis right knee medial compartment, moderately severe, and degenerative arthritis subtalar joint with essential clinical fusion and pain in the subtalar joint. (Tr. 339). Dr. Sandifer also completed a Functional Capacity Chart. (Tr. 340- 345). He opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 342). He further indicated that Plaintiff could stand and walk a total of four hours in an eight-hour workday and continuously for one hour at a time. (Tr. 343). Plaintiff could sit without limitations. (Tr. 343). He could never climb, but he could occasionally balance, stoop, crouch , kneel and crawl. Further, he could not work at heights or in proximity to moving machinery. (Tr. 344).

Because the ALJ implicitly determined that Dr. Sandifer was a reliable medical source, and Plaintiff raises no such issue herein, the Court finds the ALJ was not required to conduct the detailed analysis called for in *Newton*.

Next, the Court finds that ALJ committed no error in relying upon Dr. Sandifer's opinion in determining Plaintiff's RFC. First, Plaintiff's own testimony during the administrative hearing belies his claim that he needed a cane to ambulate after May 2005. (Tr. 375, 382). Indeed, the Court finds it quite interesting that Plaintiff reported to Dr. Sandifer that he required a cane in his *right* hand "at all times" in order to walk, yet he reported to Dr. Parker and testified that he had to use his cane in his *left* hand. (Tr. 323, 339, 380).

Second, the records of Plaintiff's own physicians demonstrate that medical improvement occurred. Dr. Parker's records show that by May 6, 2005, Plaintiff was fully weight-bearing (Tr. 319) and that his pain symptoms continued to improve with the use of MS Contin (Tr. 314-20). And, Dr. Lochemes himself was unable to explain Plaintiff's ankle pain by July 2005 considering that clinically the ankle and subtalar alignment were "perfect" and X-rays showed

good fusion after removal all hardware. (325-7).

Third, Plaintiff's reliance upon Dr. Lochemes's restriction against stooping is misplaced. Pl.'s Brief pp. 12-18. The Court is obliged to point out that according to the *Dictionary of Occupational Titles* ("DOT"), none of the jobs proffered by the vocational expert require stooping.[3]

Lastly, Plaintiff essentially argues that there is no evidence to support a finding that he could perform light work on a "sustained basis" after May 7, 2005. Pl.'s Brief pp. 13-14. This argument is without merit in light of the medical evidence showing improvement of Plaintiff's ankle condition and the vocational expert's testimony that he could perform other work. Based on the foregoing, the ALJ's RFC finding (based upon Dr. Sandifer's opinion) is supported by substantial evidence.

*Issue 2*

Here, Plaintiff argues that the ALJ failed to include his need for an assistive device in his RFC assessment. Pl.'s Brief pp. 14-16. As noted above, there was sufficient evidence in the form of Plaintiff's own testimony that he no longer required a cane to ambulate. (Tr. 375, 382). And, in view of the evidence as a whole, substantial evidence supports the ALJ's RFC finding.

*Issue 3*

Plaintiff argues that "[t]he Commissioner failed to explain why he was not adopting Dr. Sandifer's opinion that Mr. Frazier was precluded from doing any work requiring movement with agility and/or speed." Pl.'s Brief pp. 16-18. This argument is frivolous. The Court has thoroughly reviewed Dr. Sandifer's medical notes and his physical capacity assessment and has

---

[3]For the listing Gate Guard, 372.667-030, stooping is listed as "[n]ot [p]resent- [a]ctivity or condition does not exist. DICOT 372.667-030, 1991 WL 673099 (G.P.O.). Similarly, for the jobs parking lot cashier, 211.462-010 and ticket seller, 211.467-030, no stooping is required. *See* DICOT 211.462-010 and 211.467-030.

found no such "opinion." It is obvious that Dr. Sandifer's reference to agility and speed on Plaintiff's physical capacity assessment form relates to his response regarding how "the checked restrictions affect the [Plaintiff's] activities." (Tr. 344). And, as far as regards Plaintiff's suggestion that the vocational expert may not have listed the said occupations had the ALJ included an inability "to perform work requiring movement with agility or speed" in his hypothetical, the Court finds it is unfounded. Again, the DOT listings for jobs proffered by the vocational expert have no such requirement. Finally, Plaintiff's statement that it is unclear whether Dr. Sandifer meant upper or lower extremity movements frustrates the patience of the Court considering that Plaintiff has made no allegation whatsoever regarding the upper extremities in this case.

## **Conclusion**

Based on the foregoing, it is the opinion of this Court that the decision of the Commissioner be affirmed and that this case be dismissed.

Submitted this 1st day of May, 2008.

                                                 **Eugene M. Bogen**
                                                 **U. S. MAGISTRATE JUDGE**